UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TACARA WINDOM,

                            Plaintiff,    6:17-cv-06720-MAT
                                                **DECISION AND ORDER**
          -vs-

NANCY A. BERRYHILL,
Acting Commissioner OF Social Security,

                            Defendant.
_____

**INTRODUCTION**

Tacara Windom ("Plaintiff"), represented by counsel, brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying her application for supplemental security income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 1383(c). Presently before the Court are the parties' competing motions for judgement on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

**PROCEDURAL BACKGROUND**

Plaintiff protectively filed for SSI benefits on May 15, 2013, alleging disability as of August 10, 2012 due to depression, posttraumatic stress disorder, bipolar disorder, anxiety, and high blood pressure. Administrative Transcript ("T.") 80-81. The claim

was initially denied on January 10, 2014. T. 104-14. At Plaintiff's request, a hearing was held before administrative law judge ("ALJ")Brian Kane on May 22, 2014. T. 37-79. On June 25, 2014, the ALJ issued an unfavorable decision. T. 20-32. On September 18, 2014, the Appeals Council denied Plaintiff's request for review. T. 1-3. Plaintiff instituted a civil action in this Court, and on December 15, 2015, this Court remanded the claim for further administrative proceedings. *See Windom v. Colvin*, No. 6:14-CV-06652(MAT), 2015 WL 8784608 (W.D.N.Y. Dec. 15, 2015).

On remand, the Appeals Council vacated the ALJ's decision and remanded the matter for further consideration and development. T. 818-20. Plaintiff appeared with her attorney at three subsequent hearings before the ALJ, on June 30, 2016, October 6, 2016, and July 21, 2017. T. 749-817. A medical expert ("ME") also testified at the October 6, 2017 and July 21, 2017 hearings (T. 788-817) and a vocational expert ("VE") testified at the July 21, 2017 hearing (T. 749-87). On August 17, 2017, the ALJ issued an unfavorable decision. T. 722-39. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)(4). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date.

T.727. Plaintiff had worked since the onset date and the ALJ found this work activity could reasonably constitute substantial gainful activity; however, the ALJ decided not to consider those earnings as constituting substantial gainful activity and instead decided the entirety of the relevant period in his decision. In any event, the ALJ found the work performed since the alleged onset date was consistent with his RFC finding. *Id.*

At step two, the ALJ determined that Plaintiff had the "severe" impairments of: major depressive disorder, bipolar disorder, border line personality disorder, generalized anxiety disorder, and posttraumatic stress disorder. T. 728.

The ALJ also considered Plaintiff's obesity, hypertension with possible left ventricular strain, pericarditis, and bilateral knee pain. T. 728. The ALJ determined that, based on the medical evidence of record, none of the above listed physical impairments caused more than minimal limitation in the Plaintiff's ability to perform basic work activities, and accordingly, these physical impairments were nonsevere. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 730.

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform a full

range of work at all exertional levels but with the following nonexertional limitations: can have occasional contact with coworkers and the public; can engage in simple work requiring specific vocational preparation level four or below; and can understand, remember, and carry out simple unskilled work but is incapable of repetitive industrial processes, but cannot perform fast-paced work. T. 731.

At step four, the ALJ determined that Plaintiff had no past relevant work. T. 738. At step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of linen grader, laundry sorter, and photocopy machine operator. T. 738-39. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 739.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence"

in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff asks the Court to remand this matter for additional administrative proceedings, contending that the ALJ committed reversible error at step two of the sequential evaluation when he determined she had no severe physical impairments. Plaintiff further argues that the ALJ compounded this error by failing to include any exertional limitations in his RFC finding. The Court finds these arguments without merit and affirms the final decision of the Commissioner, for the reasons discussed below.

I.  **Step Two Severity Standard**

At step two of the sequential analysis, the ALJ considers the medical severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii). If an impairment is found to significantly limit the claimant's physical or mental ability to do basic work activities, that impairment will be found to be severe. 20 C.F.R. § 416.920(c). Notably, the claimant bears the burden of demonstrating that an alleged medical impairment significantly limits her ability to engage in basic work-related functions at step two. *See Cox v. Astrue*, 993 F. Supp. 2d 169, 178 (N.D.N.Y. 2012) ("The claimant bears the burden of presenting evidence establishing severity.").

Step two acts as a filter to screen out *de minimis* disability claims and, "as the Second Circuit has emphasized, is not a demanding standard." *McHugh v. Astrue*, No. 11-CV-00578 MAT, 2013 WL 4015093, at *9 (W.D.N.Y. Aug. 6, 2013) (collecting cases). Nonetheless, to be considered severe, an impairment or combination of impairments must cause "more than minimal limitations in [a claimant's] ability to perform work-related functions." *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018).

II. **Consideration of Plaintiff's Physical Impairments**

In this case, Plaintiff originally alleged disability due to depression, posttraumatic stress disorder, bipolar disorder,

6

anxiety, and high blood pressure. T. 80-81. Plaintiff now asserts that several additional physical impairments affect her functional capacity, including knee pain, hypertension, and pericarditis. *See* Docket No. 12-1 at 16.

In his decision, the ALJ noted the record reflected that Plaintiff had several physical conditions, including obesity, hypertension, pericarditis, and bilateral knee pain. T. 728. However, the ALJ found each of these conditions was either controlled, minimally treated, anomalously episodic, or lacking in specific complaints to support a finding that it caused more than minimal limitation in Plaintiff's ability to perform basic work activities. *Id*. The ALJ also noted that the medical record demonstrates Plaintiff's principal treatments have been related to mental health issues, with only isolated care related to her hypertension and pericarditis. *Id.*

The ALJ's conclusions regarding Plaintiff's physical impairments are well-supported by the medical evidence of record. Considering first Plaintiff's hypertension, the medical record demonstrates Plaintiff's ongoing treatment with medication, diet, and exercise counseling. *See* T. 333, 422, 1730. The medical record also indicates Plaintiff has a history of noncompliance for her hypertension treatment. For example, on March 23, 2017, nurse practitioner Sara Genovese reported in a treatment note that Plaintiff stated she did not know the last time she took her blood

7

pressure medication and that she was not doing blood pressure checks at home. T. 1738. As the ALJ correctly concluded, nothing in the record suggests that Plaintiff's hypertension interferes with her ability to perform work-related activities.

Turning to Plaintiff's pericarditis, in February 2015, an echocardiogram revealed borderline pulmonary hypertension and a small posterior pericardial effusion with mild circumferential thickening consistent with pericarditis. T. 1227. However, on April 23, 2015, a comprehensive cardiovascular examination was within normal limits and an echocardiogram showed normal pericardium with no evidence of a pericardial effusion. T. 1252-54. On October 1, 2015, an echocardiogram revealed vital signs consistent with pericarditis. T. 1330. On September 15, 2016, Plaintiff was seen at the Highland Cardiology clinic for a re-evaluation of her "mild chest pain." T. 1763. Plaintiff reported she had been chest pain free, with some intermittent, short durations of chest pressure unrelated to activity such as walking, leaning forward or back. *Id*. She stated she was not sure why she needed to be evaluated, and denied chest pain, shortness of breath, lightheadedness, and dizziness. *Id*. An updated echocardiogram showed no significant changes from the October 1, 2015 report. Specifically, the report showed normal biventricular systolic function, no significant valvular abnormalities, and no pericardial effusion. T. 1766. This evidence, particularly Plaintiff's denial

8

of any significant symptoms, amply supports the ALJ's conclusion that Plaintiff's pericarditis was not severe.

Plaintiff also claims the ALJ should have found her knee and toe pain severe. Again, and as the ALJ correctly found, the medical evidence of record does not show that these impairments had any significant impact on Plaintiff's ability to perform work-related activity. On September 13, 2016, at a routine physical exam, Plaintiff complained of pain in her right knee to NP Genovese. T. 1729. On examination, Plaintiff had a normal gait. T. 1730. No additional information regarding Plaintiff's knee was noted. T. 1729-32. On February 23, 2017, Plaintiff complained that she had numbness in both of her big toes for two years. T. 1741. NP Genovese noted that Plaintiff was irate no one had addressed the issue with her. *Id.* NP Genovese assessed Plaintiff's toe issue as "likely a benign finding" with "no sensory deficit." T. 1743. As the ALJ noted, the record contains no evidence of a diagnosed knee or toe impairment and there is no evidence Plaintiff ever had orthopedic, neurological, or rheumatological consultations for knee-related complaints. Plaintiff has not satisfied her burden of demonstrating a severe knee or toe-related impairment.

The ALJ also noted the Plaintiff made complaints of migraine headaches; however, he found no evidence of a diagnosis or treatment under a neurologist to establish Plaintiff's headaches were medically determinable impairments. T. 729. Nonetheless, the

9

ALJ considered their impact on Plaintiff's basic work activities and determined that Plaintiff's migraine headaches caused no more than minimal limitation and accordingly found them to be nonsevere. *Id.* Again, the ALJ's conclusion is well-supported by the medical evidence of record, and the Court finds no error in it. *See, e.g., Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (E.D.N.Y. 2012) (finding no error with the ALJ's step two determination that claimant's impairment was nonsevere)*; Terrance v. Colvin*, No. 1:14-CV-00708 (LGF)(MAT), 2017 WL 3393576, at *2 (finding no step two error where claimant's carpal tunnel syndrome did not significantly limit her abilities to perform basic work activities and thus was nonsevere).

**II. Assessment of Consultative Examiners' Opinions**

Plaintiff further contends that the ALJ relied on his own lay opinion at step two, because he afforded only "little weight" to the opinion of consultative examiner of Dr. Carolyn Ling. In particular, Plaintiff argues that the ALJ was required to credit Dr. Ling's opinion over the opinion of consultative examiner Dr. Nikita Dave, because Dr. Dave's examination predated Plaintiff's pericarditis diagnosis and treatment. This argument lacks merit. Dr. Dave examined Plaintiff on November 13, 2013. T. 341-44. Plaintiff's chief complaints to Dr. Dave were bipolar disorder, posttraumatic stress disorder, depression, anxiety, and suicidal ideation. T. 341. Plaintiff mentioned the recent occurrence of chest pain and an abnormal EKG. Plaintiff also

10

mentioned bilateral knee pain she believed was caused by her obesity. *Id*.

Upon examination, Plaintiff showed no signs of distress, exhibited a normal gait, full flexion of her spine, and full range of motion of all joints. T. 343. Dr. Dave diagnosed Plaintiff with hypertension with possible EKG evidence of left ventricular strain, with no recurrence of chest pain; mild bilateral knee pain; and obesity. *Id*. Dr. Dave opined that based on his physical examination of Plaintiff, she had "no limitations." *Id*.

In his decision, the ALJ afforded great weight to Dr. Dave's opinion and findings that Plaintiff's physical functioning and systems were all within normal limits. T. 729. He noted that Plaintiff's repeated primary care evaluations were all within normal limits and consistent with Dr. Dave's assessment. Furthermore, he noted Dr. Dave's opinion is consistent with Plaintiff making no allegations of physical limitations at her hearing. *Id*.

Dr. Ling examined Plaintiff on April 27, 2015. T. 1291-95. Upon physical examination, Plaintiff appeared in no acute distress. Plaintiff had a limping gait and was unable to walk on her heels or toes secondary to left knee pain. *Id*. Plaintiff's stance was normal, she used no assistive devices, and was able to change and get on and off the exam table without help or difficulty. T. 1292-93. Plaintiff's heart had a regular rhythm, with no murmur, gallop,

11

or rub audible. T. 1293. Tenderness to palpation was present over the substernal area of Plaintiff's chest. *Id*. The remaining portions of the physical examination were entirely unremarkable. T. 1293-94. Dr. Ling opined Plaintiff had moderate limitation for activities requiring mild or greater exertion because of her cardiac condition and pericarditis. *Id*. She also opined Plaintiff had moderate limitation for standing, walking, squatting, and kneeling due to her left knee pain. *Id*.

In his decision, the ALJ afforded little weight to the opinion of Dr. Ling, noting the opinion conflicts with Plaintiff's level of treatment and was based primarily uncorroborated subjective reports pertaining to knee pain and pericarditis. T. 728. Moreover, the ALJ noted, that by April 23 2015 (four days prior to Dr. Ling's examination and opinion), Plaintiff's follow-up cardiac testing was within normal limits and inconsistent with pericardial effusion or any other cardiological impairments. *Id.* referring to 1251-54.

The Court finds no error in the Court's assessment of the consultative examiners' opinions. An ALJ has discretion to weigh the opinion of a consultative examiner and attribute the appropriate weight based on his review of the entire record. *See Burnette v. Colvin*, 564 F. App'x 605, 605 (2d Cir. 2014). Moreover,"[g]enuine conflicts in the medical evidence are for the Commissioner to resolve, and . . . an ALJ is entitled to select between the conflicting evidence in the record." *Rolon v. Comm'r*

*of Soc. Sec.*, 994 F. Supp. 2d 496, 506 (S.D.N.Y. 2014) (quotation omitted and alteration in the original). Here, the ALJ appropriately resolved the conflict between Dr. Dave's opinion and Dr. Ling's opinion by assessing each opinion's consistence with the evidence as a whole, and appropriately concluding that Dr. Ling's opinion was unsupported by Plaintiff's medical record.

The ALJ's reliance on Dr. Dave's opinion was not improper simply because it predated Plaintiff's diagnosis of pericarditis. As discussed at length above, Plaintiff's most recent cardiac examinations were essentially normal and she denied any significant symptoms related to her pericarditis. "A gap of time does not automatically invalidate a medical source's opinion," so long as the claimant's condition has not meaningfully deteriorated after the opinion was rendered. *Wilson v. Comm'r of Soc. Sec.*, No. 17-CV-1003-FPG, 2018 WL 4901070, at *4 (W.D.N.Y. Oct. 9, 2018). In this case, there is nothing to suggest that Plaintiff's cardiac condition meaningfully deteriorated after Dr. Dave's examination, and the ALJ did not err in relying on Dr. Dave's opinion.

For the reasons set forth above, the Court finds that the ALJ's step two finding that Plaintiff had no severe physical impairments was well-supported by the evidence of record. In particular, Dr. Dave's opinion and the treatment records discussed in detail by the ALJ demonstrate that Plaintiff's physical impairments had no significant impact on her ability to perform

work-related functions.  Accordingly, the ALJ also did not err in failing to include any exertional limitations in his assessment of Plaintiff's RFC, and the Court finds no error therein and no basis for remand.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 12) is denied. The Commissioner's opposing motion for judgement on the pleadings (Docket No. 16) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   October 13, 2018
         Rochester, New York